The next case this morning is number 5220182, Rotan v. Unlimited Development, Inc. et al. Arguing for the appellant, Unlimited Development, is Donna Fudge. Arguing for the appellee, Edith Rotan, is James Price. Each side will have 15 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Good morning. Ms. Fudge, you're arguing for the appellant? Correct. All right, you may proceed when you're ready. Thank you. May it please the court. On any motion to compel arbitration, step one of the court's role is to decide whether or not the parties formed an agreement to arbitrate. That is a contract formation question, and it is a distinct and different question than the issue of the scope, interpretation, or enforceability of that agreement. In this case, the circuit court found that the parties did form an agreement to arbitrate, and it was undisputed that the FAA governed that agreement. The one and a half page arbitration agreement here was dissected down into another agreement to arbitrate, namely the delegation clause. The delegation clause is at the second sentence, and it incorporates the AAA. It's important to recognize that that delegation clause is its own separate agreement to arbitrate. It stands on its own as an agreement to arbitrate, separate and independent from the larger one and a half page arbitration agreement to which it is contained. And any time a party invokes the delegation clause, what happens is that that larger arbitration agreement in which the delegation clause is contained becomes the contract as a whole. And it is the delegation clause that becomes the arbitration clause that the party seeking arbitration is asking to be enforced. So it's critical in our case that my clients invoked their full rights under the delegation clause. And in response, Ms. Rotan failed to ever specifically challenge that delegation clause. Rather, what she did was challenge the interpretation, scope and enforceability of the larger one and a half page arbitration contract as a whole. Wait, Ms. Fudge, when you said she challenged the enforceability and scope, you've, by your own admission, mixed two concepts. You've mixed enforceability, which is for the court, and scope, which is for the arbitrator. Right? No, not true. Step one is contract formation. That's always for the court. But when you have a delegation clause and it's invoked. I'm talking about the big, any arbitration clause, the enforceability of the arbitration clause is for the court. Not true. Not when there is a delegation. What case are you relying, just generally, tell me what case you're relying on that says the enforceability of an arbitration clause is for the arbitrator. Well, there are many of them, but one of them would be Rent-A-Center, for example, or Henry Schein, for example. In those cases, the teaching is that when a party invokes the delegation clause, like my client has, the court must, and when the other side fails to challenge that delegation clause, as Ms. Rotan failed to challenge it, then the court must respect the delegation clause. The court must find the delegation clause valid under Section 2 of the FAA. It must enforce it under Section 3 of the FAA and stop there. And the court may go no further. The court may not proceed to Step 2 types of gateway threshold questions of arbitrability, like scope and enforceability, that normally courts do decide, but that general rule of what normally happens is cut off because there's an exception when a delegation clause exists and it is invoked as my client has. Okay. And the reason for all of that is because Rule 7 of the AAA delegates scope and arbitrability questions away from the court and hands those Step 2 type of questions of arbitrability over to the arbitrator to decide in the first instance. And virtually every state and federal court that has considered the impact of an arbitration agreement that incorporates arbitration associations like AAA and JAMS, they've all concluded that that evidence is a clear and unmistakable intent by the parties to delegate those normal gateway threshold questions of arbitrability, like interpretation and scope and enforceability, the things that I kind of call Step 2, to delegate those away from the court and that the parties intend to give those decisions to the arbitrator to make in the first instance. And so, haven't there been some state and federal courts that refused to recognize delegation clauses involving consumers, as opposed to more sophisticated business entities? And looking at this situation where you have someone checking into a care facility who's obviously under some disability, would it be fair to say that there's really a mutual promise to support consideration for this delegation clause, if this person really has no knowledge about this particular delegation clause? And I think the cases dealing with the consumers say, unless it's explicitly stated in the contract, which is not here, it's just a reference to AAA. Well, here the FAA has undisputedly applied. And under the FAA, the analysis that you just brought up would be preempted as treating, for example, this nursing home arbitration agreement differently and on unequal footing than any other type of contract. And that's why when we talk about Step 1, contract formation, the basic elements are offer, acceptance, and consideration. All three of those were met here. And the circuit court necessarily found that there was an agreement to arbitration that was formed, or else the circuit court wouldn't have proceeded on to then consider and interpret that agreement. I will also point out that the United States Supreme Court in the Marmette case and the Kindred versus Clark cases, they were both confronted with a nursing homes arbitration agreement entered into upon admission with the resident, elderly folks that come in with all kinds of situations. And the United States Supreme Court in both of those cases had no problem saying that that was an enforceable contract between the nursing home and the resident. Well, in those cases you cited, was the delegation agreement in the contract, or was it just a reference to AAA as you have in this case? There are certain situations where courts have looked at and said, well, you know, even though it doesn't explicitly state the delegation agreement, it refers the contracting party to where they might find this particular applicable provision in AAA. But here there is nothing. In those other cases, were there any direction at all to the contracting party, whether it was a nursing home or patient or whatever, to specific passages of the AAA? Well, the courts that have looked at that have found even when the arbitration agreement only expressly mentions the AAA association and doesn't say the word rules, that's enough. That is enough and courts say that that is an incorporation of the rules of that arbitration association. And in fact, it's interesting, the circuit court in our case previously had a case called Summers. We gave you that order and information from that case. And in the circuit court's order in the Summers case, he cited two cases saying exactly what I just said, that even if all the arbitration agreement does is mention the association like AAA or JAMS, that that is enough to incorporate the rules of those arbitration associations into the arbitration agreement. And the Summers court referenced those cases that said that that incorporation is a clear and unmistakable delegation and that when you have such a delegation, all of these, quote, questions of arbitrability must be left to the arbitrator. And to be clear... Unless the individual challenging the delegation clause does so. That is true. That would be the first step that the party challenging here, Mrs. Rotan, would have had to challenge specifically the validity of the delegation clause. But I'll also add... Because the delegation clause is still subject to the FAA under Section 2. Yes, true. So the delegation clause can be challenged just as is as any part of the entire arbitration clause itself. True. However, courts that have kind of gone there and considered that have even said, but we can hardly even fathom a way that a delegation clause would be invalid. But Renda Center clearly says that that's so, that you can challenge the delegation clause. You can, but Ms. Rotan did not. And just like Mr. Jackson in the Renda Center case, Mr. Jackson also failed to challenge specifically the delegation clause. And what did the Renda Center case say? It said it was too late for Mr. Jackson. He waived that right. Well, he waived it on appeal. He didn't raise it in his brief. That's a whole lot different than not raising it in the court below. True. The Renda Center, they forfeited because he raised it for the first time on appeal. And here, Ms. Rotan didn't raise it. That's right. I believe, yes, ma'am, that is correct. Yes, Your Honor. And Ms. Rotan did not raise it at the lower court. And in her appeal, she conceded that she's not challenging it. She said that right in her brief. So why are we here? I don't know, Your Honor. We should not be here. And again, the circuit court got it so right in Summers, in his order, was spot on, followed the law. And then here, the only thing I can say is the court, in our case, cited eight different arbitration cases in his order, but he failed to appreciate that not one of those cases involved any party invoking the delegation clause. And that's a game changer. Once you invoke that delegation clause, it changes things, and we should not be here. The circuit court should have stopped at step one and proceeded no further and compelled the case off to arbitration. How is one to know, how is a court to know whether a party like yourself is invoking one line of one clause as a separate contract? I mean, that's what you're telling us, is that one line can constitute a contract. Yes. And in here, if you look at page nine of the hearing transcript, I specifically said, quote, now, in direct contrast to the nursing home in the Peterson case, the nursing home in the present case before you today has and is invoking its full rights to enforce that delegation clause. In fact, the written agreement to arbitrate that my client is here today seeking to specifically enforce is that delegation clause. Did you file a pleading that said that? I believe it's clear from both my motion to compel, as well as my memorandum of law below, as well as my oral argument at page nine. And I even referenced the phrase. You've raised an interesting question. I'm wondering if what you're talking about is some kind of affirmative matter that has to be pled. Because how else would how else would anybody know that one line in an arbitration clause is a separate contract that you're seeking to invoke separately? Because I've got two documents that don't incorporate one another. Well, one way parties should know that is because parties are presumed to know the state of the law at the time they enter into their contract. Well, we know you and I both know because I can tell you're very schooled in this area. You and I both know that that's not what traditionally happens. So that's why we're here. We have procedural substantive unconscionability, etc. That talks about what people should know, but they don't know. So, but how is anybody to know that one line of one clause is being invoked if it's not pled? Well, because we made it clear in our motion and our memorandum of law and at page nine of the hearing transcript. And remember, an arbitration agreement needs to be placed on equal footing with all other kinds of contracts. So we can't create some additional hurdle to an arbitration agreement that wouldn't apply to any other term in an arbitration or in a contract. So the one line that we're talking about, and what are we going to call this one line, the delegation clause? Correct. Okay. So when I just want to make sure you and I are talking about the same thing. So the delegation clause itself now is subject to the same procedural and substantive unconscionability rules for us to examine as any other clause, right? In a contract. It would be in some situations. However, here, Mrs. Rotan made it clear that she was not raising any unconscionability challenges whatsoever. Okay. But under Rent-A-Center and those cases, the rule of law is that this one line's delegation clause would be subject to all contractual defenses under the FAA section two. I believe that's true. Yes. Okay. But you're saying that this court should not be able to review the delegation clause because it wasn't referred to or disputed or in any way raised by the plaintiffs. That is correct. Not only was the delegation clause wasn't challenged, and Ms. Rotan said she had no unconscionability argument to make whatsoever regarding the one and a half page arbitration agreement. So she didn't think any part of it was unconscionable. Okay. All right. Thank you very much. And arbitration is to be favored. So we'd have to kind of keep that involved, even if she had raised unconscionability. She didn't. Okay. I see your time has run out, but you will have some time to talk to us again. I appreciate it. Mr. Price, could you address right off the bat this argument that you don't have a right to raise the delegation clause because you didn't raise it below? Sure, Your Honor. Our position on the matter is that the residency agreement, which was the basis for the original motion to compel in that Mrs. Rotan's claim was related to her admission to the nursing home, is a separate contract under the Illinois contractual or law pertaining to the interpretation of contract. The contract or the residency contract in no way incorporates or references the arbitration agreement, and pursuant to case law such as Peterson, we feel they should be construed as separate independent documents, and therefore there is no delegation clause included in the residency contract. Isn't there a general rule, though, that if unless there's a contrary intent manifested, the instruments executed at the same time by the same parties for the same purpose are construed as one instrument? Well, that's correct, Your Honor, and that's what the defendants in this case have referred to as the ZIF rule. And under ZIF, it's worth actually examining the language specifically that they use, and they find in ZIF that, well, for a little background, it was a case in which there was a lease agreement with a writer that had an option to purchase the leased property. In ZIF, they found that upon examining the lease and the writer, it appears that the opinion or the option was an integral part of the lease. They referred to one another. The writer didn't have a description of the property that was to be purchased. Neither document could stand alone by itself, which is not the case that we have here. Under the contract, it reads perfectly fine and does not need any additional documents or corollary documents in order to be interpreted as it is. And that also, I should add, is where Peterson comes into this. The Peterson court found that the silence regarding the well, the not incorporating any other documents to be intentional and deliberate, and that in and of itself manifested a contrary intent to construing the documents as one. So, Mr. Price, are you saying that there's just no arbitration clause as it relates to the care agreement, and therefore there's no delegation clause either? That's precisely what I'm arguing, Your Honor. Okay. So, what does the arbitration clause refer to? Is it just a separate page? I mean… Well, it's up to interpretation here, and this is where it comes down to we don't know anything about how the actual documents were executed. The defendants in this case are proceeding as if it's accepted that the arbitration agreement in the contract were executed contemporaneously. We don't accept that proposition at all. All we know is that they were both executed on June 11th. They could have been executed hours apart for all we know. The administrator of the facility, Tina Calhoun, stated she had no knowledge with regard to the intake process. Karen Weirich, the facility employee that actually conducted the intake process, stated she had no memory of the intake process or of Mrs. Rutan at all. And it should also be pointed out that if they intended for this to be an addendum, they actually did include a document in one of the, I think, 14 that were executed that day, which specifically states it was an addendum to the residency agreement and that it amends the residency agreement. They did not include that language on the arbitration agreement, and given the presumption against including documents that are not specifically referenced in the state of Illinois, we believe that that silence is even more conspicuous in this case than it was in Peterson. So, Mr. Price, you're asking us to hold that Peterson versus residential alternatives is on point in this case. Yes, I am, Your Honor. Do you have any further arguments, sir? Well, no, I suppose we've actually about covered with all those questions, Your Honor. Was there any argument raised at trial about the any and all dispute language in the delegation clause? Could you clarify that question for me, Your Honor? The delegation clause said any and all disputes. Did you argue that at trial court? Well, we did. It was still a matter of the contractual interpretation. Our position on this has always been that under the Illinois general contractual principles, which is allowed under Section 2 of the FAA, that these documents should not be construed together, and therefore the any and all disputes is not applicable to the residency contract. Did your claim arise solely under the residency contract and no other document? Well, not exactly, Your Honor. And to be clear, we actually do dispute the scope of the arbitration agreement, but that's not actually the argument that we raise on appeal. Our argument is solely that of contractual interpretation, and that these two documents should not be construed at one. Should this court see fit to reverse the trial court, the scope issue is one that will be raised at arbitration, but that's not actually what we're arguing at this point in time. No, I understand, but in order for you to claim that there are two separate instruments here, which is what I think you're claiming, the dispute that Justice Vaughn referred to that's in the dispute language that's in the arbitration clause, did the dispute in this case arise under the CARE agreement, where you say there is no arbitration clause? Well, again, that goes back to what I just said, Your Honor. We're essentially accepting that for purposes of this appeal, but again, to be clear, we don't accept that, and it will be raised at arbitration. What do you mean you don't accept that? What is that? That our claim arises under the residency contract. Well, what are you suing for? Mrs. Rutan was injured in the course of some physical therapy. Right. Isn't that a personal injury? Yes. Does that arise under the CARE agreement? It does not, actually, Your Honor. If you read the residency agreement, it covers a lot of terms from room and board, late payments, Medicare, Medicaid, all the way down to the tobacco usage policy on the facility, but nowhere does it actually talk about the nursing care in the residency agreement. So are you bringing a common law tort claim? We're bringing a claim under the Nursing Home Care Act, Your Honor. So you're bringing a statutory claim? Correct. Okay. Well, if you're bringing a statutory claim and you have all these documents, let's assume the arbitration clause document was signed first instead of last. Would that then apply to this CARE, this tort? I actually don't believe that it would, Your Honor. And we also need to remember that there, I believe, the number was 14 documents signed that day. And so if this arbitration agreement was signed, let's say contemporaneously with a HIPAA release or the consent to use the image for Mrs. Rutan's image for social media, and then 15 documents later, then the residency agreement is signed. I mean, I think there's an argument even of itself, if they could present any evidence that that was the case, that that's almost not the same transaction anymore, which is what's required under the ZIP rule. Well, the only reason your client is in a nursing home and is subject to the Nursing Home Care Act is because there's an agreement to go into a nursing home. Isn't it true? Yes, Your Honor. Does the arbitration document give her the right to enter a nursing home? Are you asking if there's language in the arbitration agreement to give her the right to enter? Yes. That's not how I interpret it, no, Your Honor. Is the arbitration document, the document that contains the arbitration clause, does it give her the right to a statutory claim under the Illinois Nursing Home Care Act? I don't believe that it mentions the Illinois Nursing Home Care Act in the arbitration agreement, Your Honor. Does it give her the right to go into a nursing home at all? It doesn't mention anything in that category, Your Honor. Okay. So looking at it in isolation, if it's its own contract, does it give rise, does any of the language in your judgment make it a nursing home care document? The only thing that implies it's a nursing home care document is that I believe it refers to the facility and the resident as the parties. Other than that, there's nothing that specifically mentions nursing home care. Okay. Thank you. Justice Wharton, any questions? No questions. Justice Vaughn? Nothing further. All right. Mr. Price, do you have any further argument? No, Your Honor. That should cover it. All right. Ms. Fudge, do you have some response? I do. You may proceed. Thank you. What I heard from Mr. Price was a reference multiple times to interpretation and the scope and how to read these various documents. Well, again, the delegation clause that we invoked delegated all questions regarding scope and interpretation and arbitrability away from the court and handed them over to the arbitrator. And under the FAA and the United States Supreme Court, another case law that we cited to, that delegation clause must be respected, which meant that the power here with the court stopped at step one once it found contract formation and the court was not empowered to go over to step two and start to delve into how to interpret these documents and what the scope was of the arbitration agreement. You know, I disagree with your interpretation of the law on the delegation clause looking at the Rent-A-Center case because the Rent-A-Center case clearly makes it clear that even the delegation clause itself is subject to section two of the FAA, which when one challenges the validity of the agreement of the arbitrate, it's up to a court to determine the arbitration agreements enforceability and that's PrimaPay, that's Buckeye check cashing, that's all of the cases that we all know about that are old. Right, let's talk about Buckeye for example. The rule of Buckeye is that challenges to the validity of the contract as a whole rather than to the arbitration clause within that contract are matters to be considered by the arbitrator in the first instance. But the clause itself is for the court. But we have to apply that to this case. So applying that Buckeye rule to our case, the contract as a whole is the one and a half page arbitration agreement. And it's that- Let me interrupt you, I apologize. But the contract as a whole are these 14 pages is what you want to argue. Because if you're arguing one page, then what does the dispute pertain to? What I'm saying is that under the case law, what Ms. Rotan did here is she challenged the contract as a whole. Because once we invoke the delegation clause, it's the delegation clause that becomes the arbitration clause within the contract as a whole. And we know that from reading Buckeye, Rent-A-Center, Henry Schein, and KFC. Just read those four and you'll see what I'm saying. So I think what the circuit court did here is it failed to- It recognized and cited that rule of Buckeye, but then it didn't apply it properly. And applying Buckeye properly, you'll see that Mrs. Rotan was attacking the contract as a whole. But when you say the contract as a whole, what are you referring to? Mainly the one and a half page arbitration agreement is what she was attacking. Okay. Why are we talking about an arbitration agreement at all is the plaintiff's position if it doesn't apply to the care agreement? Do you see what I'm saying? I hear Mr. Price saying, we don't even need to talk about it. That's why we didn't talk about the delegation clause because it doesn't apply in our case. Well, the question of whether it applies to the negligent care case is a scope question. Or an enforceability question. Because if we didn't enter into the contract, right? If we didn't legally enter into it, it's an enforceability issue. Well, I think with all due respect, we're mixing step one, which is contract formation, the basic elements, offer, acceptance, consideration. We have those here. No, I'm disagreeing with you. Right at step one. I'm disagreeing with you because that's what I hear the plaintiff saying is we didn't agree to enter into a contract that contained an arbitration agreement. So there is no contract to arbitrate. No, Mrs. Rotan never disputed that she entered into an agreement to arbitrate. All she disputed was that the agreement to arbitrate that she entered into didn't include within its scope her nursing home negligent care case. And to make that argument is involving things like interpretation and analyzing the scope. Both interpretation and scope fall under what I call step two and what the case law calls step two questions of arbitrability. When you have a delegation clause and it has been invoked like we've invoked it, all of those questions of arbitrability regarding scope, interpretation, and enforceability shall be left to the arbitrator to decide. But that again assumes that the delegation clause has been actually entered into as a part of contract formation. True, but here it has, and that was never disputed. So let me- I think I understand your argument. I mean, vis-a-vis the plaintiff's argument. Right. Okay. May I- Let me ask the justices if they have a question. Justice Wharton? No. Justice Raun? Yes, is it fair to say you think this is a case where the issue is scope or arbitrability? The issue here is scope and most case law includes the debate over interpretation and scope within the category. Well, let me back up. You think scope is different from arbitrability and how so? It can be a subset of it. Scope is in the category of what I call step two. You don't get to scope unless and until you've first done step one and you found that the parties formed an agreement to arbitrate. And let me stop there because that's a simple question. Step one, did they form an agreement to arbitrate? Step one does not- Does the court decide that or does it shine state that the arbitrator decides arbitrability? Depending upon how you define arbitrability. But may I? Step one is whether the parties formed an agreement to arbitrate. It's that simple. Step one does not ask whether the agreement to arbitrate that they formed includes within its scope the causes of action that are being pursued. That scope question doesn't come about until step two. And it is that scope question that has been delegated in our case to the arbitrator. And to be clear, the court always must decide the step one question of whether the parties formed an agreement to arbitrate. But don't confuse that with a question of, well, did that agreement to arbitrate include within its scope the negligent nursing home care case? Because that question about whether the scope included the negligent care of the nursing home services, that is a scope question that gets to step two. And that is a scope question that has been delegated away from the courts and given over to the arbitrator. And that delegation clause must be respected according to Renner Center and Henry Schein. Mrs. Vaughn? Any further questions? I'm not sure I agree. More than that, they bargained for arbitrability seems to be a gateway question. And the gateway question, my understanding of the AAA rules are that the arbitrator gets to decide the gateway issues. Is that not correct? Yes, the arbitrator here gets to decide a whole subset of threshold gateway questions like interpretation, scope, enforceability, voidability, unconscionability if it had been raised. Yes, under our delegation clause, all of those traditional gateway things that are normally decided by a court, once you provoke and invoke a delegation clause, those are all questions that are left to the arbitrator to decide in the first instance. So what you're saying is you can use a delegation clause to take away the rights of the court? I'm not saying that. The federal arbitration agreement has said that since 1925 and the United States Supreme Court case law interpreting that act of Congress signed into law by the President of the United States is what says that. And it stresses that the FAA... I think you paint too broad a brush when you say that. I agree with you conceptually that the delegation clause once invoked, as long as the plaintiff doesn't object to it, can take away the rights of the court on the first step one, as you call it. But if the plaintiff here had invoked its right to challenge the delegation clause, then step one would still, as to the delegation clause, be within the auspices of the court. That is to determine whether the delegation clause was enforceable. No. At that point, I think the court would look at whether or not the delegation clause was formed and whether it was a clear and unmistakable delegation. And I think it would easily say, yes, it was formed, and yes, it's clear and unmistakable based upon the long-minded cases that I've already mentioned. And at that point, under Rent-A-Center and Henry Schein, the court would have to, under section two of the FAA and section three of the FAA, find that delegation clause valid and enforceable. Okay. So you don't believe that a delegation clause is subject to the rule of law that it is subject to enforceability, and I'm quoting, save upon such grounds as existent law or inequity for the revocation of any contract, which is section two of the FAA. It could be. It's just that here there's nothing unconscionable or unenforceable. Well, that's a conclusion of law that you're making. Yes, and it's something that Ms. Rutan never challenged. I hear you say that, but my hypothetical was, had she challenged it,  would not have stripped the court of its ability, in your opinion, to decide certain cases when the gateway matters? Had she made that a challenge? If she challenged the delegation clause, then the court would have had to put blinders on, and the court would have had to look just at the delegation clause alone and ask itself, was this delegation clause formed and is it enforceable? And was it subject to normal contract offenses? That's what the section two of the FAA says. I guess it could be. Again, that's not an issue that was raised here. I guess theoretically, a delegation clause could be subjected to all of the contract offenses that you would normally raise in any contract case. You could say unconscionability. You could say other things. Right, okay. Justice Vaughn? Nothing further. Justice Wharton? The delegation cases always are interesting for the court. They have multiple issues, and so I'm sorry if either of you felt picked upon, but certainly that wasn't our intention in any way, shape, or form. It's just that they're fascinating. The law is changing all the time, and so we appreciate your tenacity on behalf of your clients. We really do. Thank you for your time, and we will issue an order after some deliberation, okay? Thank you so much. Have a great day, and appreciate you both.